IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID W. SHORE,                    )
                                   )
                                   )
             Plaintiff,            )
                                   )   Case No. 11 CV 7742
     v.                            )
                                   )   Magistrate Judge Sidney I. Schenkier
OFFICER MICHAEL DONNELLY,          )
                                   )
             Defendant.            )

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff David Wayne Shore filed suit against Defendant Michael Donnelly pursuant to

42 U.S.C. § 1983, alleging that Defendant violated his constitutional rights by preventing him

from registering as a sex offender, and thereby forcing him into the involuntary violation of an

Illinois sex offender law. Defendant now moves for summary judgment pursuant to Rule 56(c)

of the Federal Rules of Civil Procedure (doc. # 67). For the reasons set forth below, Defendant's

motion for summary judgment is granted.

## I.

Before turning to the facts of this case, we first examine Local Rule ("L.R.") 56.1, which

governs motions for summary judgment in the Northern District of Illinois. *See Birks v. Dart*, 12

C 7701, 2014 WL 1345893, at *1 (N.D. Ill. Apr. 4, 2014). Local Rule 56.1(a)(3) requires the

moving party to file "a statement of material facts as to which the moving party contends there is

no genuine issue and that entitle the moving party to a judgment as a matter of law." L.R.

56.1(a)(3). In response, the non-moving party must file "a concise response to the movant's

---

[1] On August 19, 2013, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this
case was assigned to this Court for all proceedings, including entry of final judgment (docs. ## 57, 60, 62).

statement that shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3), (b)(3)(B). Additionally, Local Rule 56.1(b)(3)(C) requires the non-movant to file "a statement . . . of any additional facts that require the denial of summary judgment." L.R. 56.1(b)(3)(C). Facts included in the movant's statement are deemed admitted unless properly controverted by the opposing party. *Id.* Courts have discretion to demand strict compliance of these rules from all litigants, including *pro se* litigants. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *see also Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (stating that "it is also well established that pro se litigants are not excused from compliance with procedural rules"). Accordingly, a district court does not abuse its discretion when it refuses to consider additional facts proposed by a *pro se* litigant after that party has failed to comply with Local Rule 56.1. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

In this case, Plaintiff failed to file a response to Defendant's Statement of Facts as required by Local Rule 56.1(b)(3). This failure raises the possibility that Plaintiff may not have fully understood the consequences of failing to respond to a summary judgment motion.[2] However, any breakdown in the notification process is harmless if this Court finds no evidence of prejudice to Plaintiff. *See Timms v. Frank*, 953 F.2d 281, 285-86 (7th Cir. 1992) (upholding

---

[2] Notice to a *pro se* party of the summary judgment process "should include both the text of Rule 56(e) and a short and plain statement in ordinary English that any factual assertion in the movant's affidavits will be taken as true by the district court unless the non-movant contradicts the movant with counter-affidavits or other documentary evidence." *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992) (citing *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)). The docket does not contain any entry suggesting that Plaintiff received such notice. The only information on this matter comes from a recorded status conference dated September 11, 2013, at which Defendant made clear to Plaintiff and the Court that he intended to file a motion for summary judgment. Consequently, the Court explained to Plaintiff the basic elements of a summary judgment motion and then set a briefing schedule (doc. # 65: Minute Entry dated September 11, 2013). Also during this conference, the Court instructed Defendant to communicate with Plaintiff to explain the reasoning behind Defendant's imminent summary judgment motion. It is unclear whether this communication occurred and, if so, whether Plaintiff was fully informed about the need to file a responsive Statement of Material Facts.

summary judgment where *pro se* plaintiff could show no prejudice from lack of notification). Prejudice is considered lacking if any additional evidence Plaintiff could have submitted "would still be insufficient to make out a prima facie case" under Section 1983. *Id.* at 287. In other words, there is no prejudice if summary judgment is unavoidable, notwithstanding the lack of proper notification. *Id.* at 286. In this case, as shown below, we have considered Plaintiff's sworn testimony as presented in Defendant's Statement of Facts yet conclude that, even accepting as true for purposes of this motion Plaintiff's version of the events of September 4, 2011, Plaintiff cannot make out a prima facie case under Section 1983. Accordingly, we conclude that Plaintiff was not prejudiced by any lack of notice regarding the consequences of non-compliance with Local Rule 56.1.

## II.

Defendant's Statement of Material Facts (including Plaintiff's version of the events of September 4, 2011) is uncontested and therefore provides the basis for the factual background set forth below, although we still "constru[e] all facts and draw[ ] all reasonable inferences in favor of the nonmoving party." *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). On January 29, 2009, Plaintiff was convicted of child molestation in St. Joseph County, Indiana (doc. # 68: Def.'s Statement of Facts ("Def.'s SOF") ¶ 8). He was mandatorily paroled on July 28, 2011, but instead of reporting to his Parole Agent on August 2, 2011, he fled Indiana and entered Illinois (Def.'s SOF ¶¶ 9–10; Dep. of David Wayne Shore ("Pl.'s Dep.") at 47, 53). Plaintiff arrived in Joliet, Illinois on August 6, 2011 and slept under a viaduct within the Joliet city limits (Def.'s SOF ¶ 11; Pl.'s Dep. at 50, 55–56). While living there, Plaintiff used the computer at the Joliet Public Library, which was only about a block and a half from the Joliet Police Department (Def.'s SOF ¶ 41; Pl.'s Dep. at 56–57). At no time between August 6, 2011

and September 26, 2011, when Plaintiff was arrested by Detective Landeros of the Joliet Police Department, did Plaintiff attempt to register as a sex offender with the City of Joliet Police Department (Def.'s SOF ¶ 15; Pl.'s Dep. at 51–52, 59–61).

Plaintiff has never lived in New Lenox, Illinois, nor did Plaintiff stop in New Lenox on his way from Indiana to Joliet (Def.'s SOF ¶ 13; Pl.'s Dep. at 55). Even so, on Sunday, September 4, 2011, Plaintiff claims to have walked from Joliet to the New Lenox Police Department, which was a distance of 11.4 miles (Def.'s SOF ¶ 21; Pl.'s Dep. at 83–84).

It is undisputed that on Sundays, the New Lenox Police Department is closed to the general public (Def.'s SOF ¶ 56). A member of the public who comes to the station would have to go to the rear of the building and use a wall phone to contact a dispatcher and ask that officers come to a specific location (Id. at ¶¶ 57-58). There is no record of such a call being made by Plaintiff asking that Officer Donnelly leave his patrol zone and report to the station on September 4, 2011 (Id. at ¶¶ 59-60).

Even so, Plaintiff states that he arrived at the New Lenox Police Department on the morning of September 4 and, upon walking through the front entrance, told Officer Donnelly, a patrol officer, that he needed to register as a sex offender (Def.'s SOF ¶¶ 22–24; Pl.'s Dep. at 89–94).[3] Defendant responded by telling Plaintiff that no one was present at that time with the authority to register him, and asked if he could come back later (Def.'s SOF ¶ 25). Plaintiff thanked Defendant and said he could (Def.'s SOF ¶ 25; Pl.'s Dep. at 94, 96). Plaintiff never returned to the New Lenox Police Department to attempt to register (Def.'s SOF ¶ 27; Pl.'s Dep. at 95-96).

---

[3] In fact, Defendant denies that he ever met Plaintiff (Def.'s SOF at 5 n.1). However, to avoid a case of "dueling affidavits" that could preclude summary judgment, Defendant adopted Plaintiff's version of the facts of September 4, 2011 in his own Statement of Facts so as to prevent this possibility (Id.). Accordingly, for purposes of this ruling, we accept as true Plaintiff's version of the events of September 4, 2011.

On September 26, 2011, Detective Tizoc Landeros of the Joliet Police Department learned that Plaintiff was spending time at the Morning Star Mission in Joliet and that he was a child sex offender with an outstanding warrant for his arrest on parole violations with the Indiana Department of Corrections (Def.'s SOF ¶¶ 28–29). Detective Landeros further learned that Plaintiff had not registered as a sex offender in the State of Illinois but had been issued a State of Illinois identification card on September 16, 2011 (Def.'s SOF ¶ 30). Detective Landeros arrested Plaintiff at the Plaza Hotel in downtown Joliet, where Plaintiff had been renting a room (Def.'s SOF ¶¶ 32–33). Plaintiff received his *Miranda* rights, waived his constitutional right to counsel, and consented to a recorded interview wherein he told Detective Landeros that he knew he had a duty to register as a sex offender in both Indiana and Illinois but that he had failed to do so because he did not have an address to register (Def.'s SOF ¶¶ 34–35; Pl.'s Dep. at 49–52). Plaintiff never said to Detective Landeros that he had attempted to register in New Lenox (Def.'s SOF ¶ 37; Pl.'s Dep. at 62–63).

Plaintiff pleaded guilty on May 21, 2012 to failing to register as a sex offender in the State of Illinois within three days of residing in the State, in violation of 730 ILCS 150/3 (doc. # 68-8: Pleas of Guilty) (Def.'s SOF ¶¶ 3–4, 33). Plaintiff was present in court every day between the start of his trial on November 7, 2011, and his guilty plea on May 21, 2012; yet, Plaintiff never claimed that he had made an unsuccessful attempt to register in New Lenox (Def.'s SOF ¶¶ 46–48; Pl.'s Dep. at 64–66).

### III.

"Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014); Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure

56(c) dictates that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material fact*." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original) (citing Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists only if there is evidence "to permit a jury to return a verdict for" the non-moving party. *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010). The moving party has the burden of establishing the lack of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, then "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). In doing so, the non-movant must "set forth specific facts showing that there is a genuine issue for trial" that go beyond those facts set forth in the pleadings. *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012) (internal quotations and citations omitted). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## IV.

Defendant moves for summary judgment on three main grounds: (1) that Plaintiff is unable to establish the violation of a constitutional right under 42 U.S.C. § 1983; (2) alternatively, that Defendant's conduct was reasonable under the circumstances, thus entitling him to qualified immunity; and (3) that Plaintiff's evidentiary admissions render his testimony regarding attempted registration incredible as a matter of law. This Court addresses Defendant's

arguments in two parts: in Part A, we discuss Defendant's contention that Plaintiff cannot identify a constitutional right of which he was deprived under Section 1983; and in Part B, we address Defendant's argument that he is entitled to qualified immunity relative to his actions on September 4, 2011.[4]

## A.

Plaintiff brings this suit pursuant to 42 U.S.C. § 1983, which requires him to provide evidence of material fact showing that Defendant, while acting under color of law, deprived him of an established right, privilege, or immunity secured by the Constitution and laws of the United States. *Lewis v. Downey*, 581 F.3d 467, 472-73 (7th Cir. 2009). To show a violation of Section 1983 in this case, Plaintiff needs to establish that Defendant, acting in his capacity as a police officer, deprived Plaintiff of a constitutional right by turning him away on September 4, 2011 without first registering him as a sex offender (doc. # 74: Pl.'s Resp. to Def.'s Mem. in Support of Mot. Summ. J. ("Pl.'s Resp.") at 2).

With this framework in mind, we turn to Defendant's first argument, which is that summary judgment is appropriate because Plaintiff cannot establish the violation of a constitutional right (doc. # 69: Def.'s Mem. in Support of Mot. Summ. J. ("Def.'s Mem.") at 1). Defendant maintains that Plaintiff had a legal duty pursuant to the Illinois Sex Offender Registration Act ("SORA"), 730 ILCS 150 *et seq.*, to register as a sex offender in the municipality in which he resided—a duty that Plaintiff cannot twist into a constitutional right that he claims was then violated by Defendant (Def.'s Mem. at 1-2).[5] Defendant further points

---

[4] We need not address Defendant's argument concerning the implausibility of Plaintiff's statement that he sought to register at the New Lenox Police Department. A decision can be rendered in this case based on the uncontested facts set forth in Defendant's Statement of Facts, which assumes the truth—as do we on summary judgment—of Plaintiff's version of the events of September 4, 2011.

[5] Plaintiff does not dispute that he had a duty to register under SORA (Def.'s SOF ¶¶ 34-35; Pl.'s Dep. at 51-52). Nor does Plaintiff allege that the Indiana correctional facility at which he originally was incarcerated failed to

7

out that nothing within the confines of SORA suggests an intention to "mandate that an individual municipality provide registration to offenders on a 24 hours per day, 7 day per week, 365 days per year basis" (Def.'s Mem. at 6).

In response, Plaintiff argues that he is shielded from his failure to register by language contained within the federal counterpart to SORA, known as the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250 *et seq.*, which permits as an affirmative defense to registration on a showing that: "(1) uncontrollable circumstances prevented the individual from complying; (2) the individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and (3) the individual complied as soon as such circumstances ceased to exist." 18 U.S.C. § 2250(b). Plaintiff maintains that this affirmative defense applies here because Defendant prevented him from registering, and because he remedied the situation by registering after he was arrested by Officer Landeros (Pl.'s Resp. at 1).

As a convicted sex offender out on parole, Plaintiff was required under Illinois law (embodied by SORA) to register "with the chief of police in the municipality in which he . . . resides or is temporarily domiciled for a period of time of 3 or more days." 730 ILCS 150/3(a)(1). A place of residence or temporary domicile is defined as "any and all places where the sex offender resides for an aggregate period of time of 3 or more days during any calendar year." *Id.* at 150/3. SORA further provides that "[a]ny person who lacks a fixed residence must report weekly, in person, with the sheriff's office of the county in which he . . . is located in an unincorporated area, or with the chief of police in the municipality in which he . . . is located." *Id.*

---

inform him of his duty to register. *See* Indiana Sex Offender Registration Act, IC 11-8-8-9 (requiring correctional facilities to inform soon-to-be-released sex offenders of their duty to register as sex offenders upon their release); *see also* SORA, 730 ILCS 150/4 (requiring correctional facilities to inform sex offenders of their duty to register and of the consequences of a failure to register, including revocation of parole).

The language of SORA is succinct and makes very clear that Plaintiff had a statutorily-mandated duty to register as a sex offender within three days of entering Illinois. Plaintiff did not do so. He did not return to register with the New Lenox Police Department, as he admits he was instructed to do by Defendant; nor, during the subsequent three weeks before his arrest on September 26, 2011, did Plaintiff initiate registration with any other police department. Plaintiff's failure to register represented an on-going violation of SORA that was never cured. As Defendant points out, and we agree, Plaintiff cannot convert his unfulfilled, statutorily-mandated state law *duty* to register into a federal constitutional *right*, and then claim a violation of that right merely because Defendant asked him to return at a later time when someone with authority was present to register him. Simply stated, we conclude that there is no constitutional right to register as a sex offender. There is only a legal duty, imposed by statute, to register.

Having found no constitutional right to register as a sex offender, we turn briefly to the question of whether Defendant violated Plaintiff's due process rights under the Fourteenth Amendment when he turned Plaintiff away on September 4, 2011. Plaintiff makes no such allegations, but still we cast the constitutional net a little wider in deference to Plaintiff's *pro se* status. To sustain a due process claim under the Fourteenth Amendment, Plaintiff must show there was a deprivation of life, liberty or property and that the procedures provided by Defendant to prevent such a deprivation were inadequate. *See* U.S. CONST. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law"); *see also Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976) (providing a three-part balancing test to determine what procedures are required when there has been a deprivation of life, liberty or property). There is no evidence in this case that Plaintiff was deprived of life, liberty or property as a consequence of Defendant's actions. Defendant simply informed Plaintiff that he

(Defendant) was unable to complete the registration and that Plaintiff needed to return at a different time. Plaintiff's subsequent arrest was a "loss of liberty," but it was not caused by any action by Officer Donnelly in not registering him on September 4, 2011. Rather, Plaintiff's arrest was the direct consequence of his failure to fulfill his duty to register under SORA, including his failure to register with any police department in the 22 days after September 4. Plaintiff does not offer evidence that could show that the New Lenox Police Department procedures in effect to handle the registration of sex offenders were inadequate to protect his interests. Accordingly, we decline to delve further into this matter and conclude that Defendant did not violate any of Plaintiff's due process rights under the Fourteenth Amendment.[6]

Finally, we observe that Plaintiff's attempt to rely on SORNA is misguided. SORNA has no bearing on this case because Plaintiff was charged and convicted under Illinois law, and not under federal law. In addition, even if SORNA applied, it would at most have given Plaintiff an affirmative defense to his criminal prosecution—one that he never asserted (Def.'s SOF ¶ 47). Even had Plaintiff raised that affirmative defense in his criminal case, we fail to see how it would have assisted him. The affirmative defense requires a person to show that the failure to register was due to "uncontrollable circumstances" that he did not help to create, and that he complied with the registration requirement as soon as these circumstances abated. Here, Plaintiff has offered no evidence that would explain his failure to register for some four weeks between his arrival in Joliet on August 6 and his alleged visit to the New Lenox Police Department on September 4, or for more than three weeks thereafter until his arrest.

---

[6] Because we find no evidence of a constitutional violation and thus no violation of Section 1983, we need not address Defendant's alternative arguments, including his contention that Joliet, and not New Lenox, was the proper place for Plaintiff to register, or that Defendant properly followed applicable New Lenox Policy Department policy when he told Plaintiff to return at a later time.

The sole issue before this Court is whether Defendant violated Plaintiff's constitutional rights under Section 1983 by turning him away on September 4, 2011. We conclude that he did not.

**B.**

Defendant also argues that summary judgment is appropriate, even if Plaintiff presented a triable issue on the claim that a constitutional right was violated, because Defendant is entitled to qualified immunity for his actions. We agree. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This defense balances two different, important interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In determining whether qualified immunity applies in this case, we must consider: "(1) whether . . . [P]laintiff has asserted a violation of a federal constitutional right, and (2) whether the constitutional standards implicated were clearly established at the time in question." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). The burden of meeting the elements of this two-part test rests on Plaintiff. *Id.*; *see also Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003) (placing burden on plaintiffs to defeat defendant's qualified immunity defense stemming from execution of a search warrant). And it is a burden Plaintiff clearly cannot meet. As noted already several times, Plaintiff has failed to present a triable claim that Defendant violated a clearly established constitutional right. But even were it otherwise, there is no basis for any claim that the alleged constitutional right was "clearly established." *See, e.g., Spiegel*, 196 F.3d

at 723 (finding that the right to be free from arrest without probable cause is a clearly established constitutional right); *White v. Stanley*, 745 F.3d 237, 241 (7th Cir. 2014) (noting that "searching or arresting anybody after an unjustified home entry violates clearly established constitutional rights"); *see also Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995) (concluding that "[i]f a plaintiff's allegations, even when accepted as true, do not state a cognizable violation of constitutional rights, then the plaintiff's claim fails") (citations omitted). Accordingly, we conclude that qualified immunity shields Defendant from liability in this case.[7]

Defendant raises several additional arguments concerning immunity under SORNA and the Illinois Tort Immunity Act. We need not address these arguments, as we find summary judgment appropriate for the reasons we have stated above. *See Hugunin v. Land O'Lakes, Inc.*, 11 C 9098, 2014 WL 1052502, at \*6 n.1 (N.D. Ill. Mar. 19, 2014) (noting that once the court finds a basis for summary judgment, it need not address alternative arguments).

---

[7] Plaintiff argues that qualified immunity does not apply because Defendant "is a police officer of the MUNICIPALITY of New Lenox, Illinois, and is NOT a government official of the state" (Pl.'s Resp. at 2) (emphasis in original). This is an incorrect statement of law. Although qualified immunity is not always available to a municipality under Section 1983, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 701 (1978); *Capra v. Cook County Bd. of Review*, 733 F.3d 705, 711 (7th Cir. 2013), government officials, such as police officers, are permitted to avail themselves of this defense. *See Harlow*, 457 U.S. at 818.

## V.

For the foregoing reasons, Defendant's motion for summary judgment (doc. # 67) is granted. We enter judgment for Defendant and against Plaintiff. This case is terminated.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATED: April 29, 2014